# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

## Commonwealth, Appellant, v. Arow.

*Constitutional law—Title of statute—Food law—Act of June 26, 1895,
P. L. 317.*

The Act of June 26, 1895, P. L. 317, entitled "An Act to provide
against the adulteration of food, and providing for the enforcement
thereof," is not defective in title in that its title does not embrace the
subject of the sale of adulterated food.

Under the act of June 26, 1895, it is not necessary for the common-
wealth to plead that the article sold was not within the proviso of the
third section of the act.

On an indictment under the act of June 26, 1895, the question of
the validity of the title to office of the "Dairy and Food Commissioner,"
is immaterial.

An objection to such a prosecution that it was instituted by an agent
of the Department of Agriculture is without merit.

Argued March 6, 1906. Appeal, No. 115, April T., 1906,
by plaintiff, from judgment of Q. S. Lawrence Co., Dec. T.,
1905, No. 35, quashing an indictment in case of Commonwealth
v. W. H. Arow. Before RICE, P. J., PORTER, HENDERSON,
MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Indictment under the Food Act of June 26, 1895, P. L. 317.
Before PORTER, P. J.

The opinion of the Superior Court states the case.

*Error assigned* was the order of the court.

*J. Norman Martin*, with him *J. V. Cunningham*, district attorney, for appellant.—The title of the act is sufficient: Com. v. Curry, 4 Pa. Superior Ct. 356; Com. v. Jones, 4 Pa. Superior Ct. 362; Com. v. Hufnal, 4 Pa. Superior Ct. 301; Com. v. Moore, 2 Pa. Superior Ct. 162; Taggart v. Com., 102 Pa. 354; Com. v. Charity Hospital, 198 Pa. 270; Allegheny County Home's App., 77 Pa. 77; Com. v. Houseman, 11 Pa. Dist. Rep. 480; People v. Compagnie Generale Transatlantique, 107 U. S. 59 (2 Sup. Ct. Repr. 87).

*C. H. Akens*, for appellee.—The title is insufficient: Com. v. Kevin, 202 Pa. 23; Phœnixville Road, 109 Pa. 44; Mt. Joy Borough v. Lancaster, etc., Turnpike Co., 182 Pa. 581; Dorsey's App., 72 Pa. 192; Ridge Ave. Pass. Ry. Co. v. Phila., 124 Pa. 219; Pierie v. Phila., 139 Pa. 573; Quinn v. Cumberland County, 162 Pa. 55; Com. v. Severn, 164 Pa. 462; Payne v. Coudersport Borough School District, 168 Pa. 386; Com. v. Frantz, 135 Pa. 389; Com. v. Hufnal, 185 Pa. 376.

The act is a penal act creating an arbitrary and artificial crime, without reference to criminal intent, and must receive a strict construction with due regard to the popular comprehension: Commonwealth v. Kebort, 212 Pa. 289; Com. v. Curry, 4 Pa. Superior Ct. 356; Com. v. Hufnal, 185 Pa. 376.

Opinion by Henderson, J., October 5, 1906:

The principal question raised on this appeal was considered in Commonwealth v. Curry, 4 Pa. Superior Ct. 356, and was impliedly passed upon in Commonwealth v. Kevin, 202 Pa. 23, in each of which cases the indictment under the Act of June 26, 1895, P. L. 317, for the sale of adulterated food, was sustained. In the latter case the object of the statute was said to be " to protect the public health by securing pure food and to prevent fraud and deception in the manufacture and sale of adulterated articles of food." It was further declared in the same opinion that " the purpose of the legislature in the passage of the act is most commendable and the statute should receive a construction by the courts that will fully and effectively accomplish the object of its enactment." It is now objected that the title of the statute only includes the act of adulteration and that it is defective in not embracing the subject

of sale, and the indictment was quashed in the court below for that reason. The title of the act is " An act to provide against the adulteration of food, and providing for the enforcement thereof." To " provide against " is to anticipate and take precautionary measures against harm or danger. The injury to be prevented is that arising from the use of adulterated food. Adulteration has reference not only to the act of contamination, but to the condition of the food as a result of such debasement. In view of the object sought we have no doubt that the words were so used by the legislature. They have these well-known meanings and should be so interpreted in determining the validity of a statute so beneficent in its objects. It is an act establishing precautionary measures against food adulteration and applies not only to the deterioration of food products, but also to their sale. A very large proportion of the food supply consumed by the people of the commonwealth is manufactured or compounded beyond the boundaries of the state, and a statute which prohibits the act of adulteration but permits the sale of adulterated goods would furnish little protection to the citizens of the commonwealth. Such legislation was not intended by the lawmakers and the scope of the act is not so limited by the language of the title. One of the most obvious and effective methods of guarding against the adulteration of food is to prohibit its sale, and it seems manifest that the title of an act to provide against such adulteration would attract the attention of dealers as well as manufacturers and lead to an examination of the provisions of the statute. The adulteration of food is the subject of the act and the title is sufficiently comprehensive to cover all of its prohibitive and penal provisions. It is legislation aimed at the traffic in impure and unwholesome food and it would be a refinement of strict construction to hold that the meaning of the language of the title is too restricted to cover the act of sale, from which the principal harm arises. The case of Commonwealth v. Kebort, 212 Pa. 289, does not sustain the argument of the appellee. All that was there decided was that drink is not included in the term " food " and that, therefore, so much of the act as applies to the sale of liquors is not suggested in the title.

The learned judge of the court below seems not to have been impressed by the other grounds presented for quashing the in-

dictment. The objection that the indictment sets forth the methods by which the adulteration was accomplished, and its effect, is without merit. The third section of the act defines various methods and conditions of adulteration, but it will be readily seen that a substance might be added to the food which would both " injuriously affect its quality " and be " poisonous or injurious to health."

It was not necessary for the commonwealth to plead that the article sold was not within the proviso of the third section. This proviso only relates to mixtures or compounds not injurious to health, whereas the indictment charges that the added substances were poisonous and injurious to health. It was, moreover, a matter of defense to show that the thing sold was within the exemption of the proviso.

It does not appear in the indictment that the article sold by the defendant was obtained under the provisions of the fourth section of the statute, requiring a vendor to furnish to the purchaser a sample of the article of food for analysis. The indictment avers, in proper form, a sale by the defendant.

A considerable part of the argument of the appellee is devoted to a discussion of the validity of the title to office of the " Dairy and Food Commissioner." We do not consider this relevant to the question presented on the appeal. The act defines the offense and prescribes the penalty. The appropriation of the penalty by the legislature is independent of the offense and is a matter of legislative discretion. The penalties are directed to be paid to the dairy and food commissioner or his agent and to be by him paid into the state treasury. The incapacity of this officer to act does not effect a remission of the offense. The penalty is still payable to the commonwealth.

The objection that the prosecution was instituted by an agent of the department of agriculture is without merit. Whether an agent of that department or not, the prosecutor had a right to institute the proceeding for a criminal violation of law. We are unable to agree with the conclusion of the learned judge of the court of quarter sessions in holding the indictment invalid.

The judgment is therefore reversed and a procedendo awarded.